JACOB T. SPAID (Bar No. 298832)
spaidj@higgslaw.com
JAKE D. SESTI (Bar No. 339005)
sestij@higgslaw.com
HIGGS FLETCHER & MACK LLP
401 West A Street, Suite 2600
San Diego, California 92101-7910
Telephone:  (619) 236-1551
Facsimile:   (619) 696-1410

Attorneys for Plaintiff
ROBERT B. WHITMAN

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT B. WHITMAN,<br><br>Plaintiff,<br><br>v.<br><br>CPR CLASSIC SALES, ANDREA DOHERTY, and DYLAN DOHERTY<br><br>Defendants. | Case No. '24CV1227 LL   DDL<br><br>**COMPLAINT**<br><br>JUDGE:<br><br>TRIAL DATE: |

Now comes Plaintiff Robert B. Whitman ("Plaintiff"), by and through counsel, and for his Complaint against Defendants CPR Classic Sales ("CPR"), Andrea Doherty ("Ms. Doherty"), and Dylan Doherty ("Mr. Doherty") (collectively, "Defendants") states as follows:

**I.    INTRODUCTION**

1.    This case arises from Defendants' breach of contract and fraudulent actions against Plaintiff to pay Defendants approximately $166,000 with regard to the purchase of a vintage 1970 Porsche 911T Targa (the "Porsche").

2.    Defendants held themselves out to Plaintiff as having expertise and industry knowledge to broker the acquisition and transfer of the Porsche to Plaintiff.

3. Relying on Defendants' representations and written contract, Plaintiff transferred $166,000.00 to Defendants to complete the purchase and transfer the Porsche to Plaintiff.

4. Despite Plaintiff's transfer of the funds to Defendants, the written contract, and over a year of written and verbal promises, Defendants never completed the purchase of the Porsche, and Defendants continue to refuse to return Plaintiff's $166,000.00.

## II. PARTIES, JURISDICTION, AND VENUE

5. Plaintiff is an individual who resides at 767 Macon Alley, Columbus, OH 43206.

6. Defendant CPR Classic Sales is a licensed vehicle dealer, California Dealer License Number 47956, with a principal place of business of 311 Industrial Way, Suite 3, Fallbrook, CA 92028. Plaintiff does not currently have sufficient information or belief to allege CPR's specific type of business entity, but Plaintiff believes that CPR is a sole proprietorship and a "doing business as" of Defendants Andrea Doherty and/or Dylan Doherty, and/or is the alter ego of Andrea Doherty and/or Dylan Doherty (and possibly other individuals).

7. Defendant Andrea Doherty is an individual who resides at 2454 E. Mission Road, Fallbrook, CA 92028. Plaintiff is informed and believes and thereon alleges that Ms. Doherty is doing business as CPR, and/or is an alter ego of CPR.

8. Defendant Dylan Doherty is an individual who resides at 3192 Caminita Cortina, Fallbrook, CA 92028. Plaintiff is informed and believes and thereon alleges that Mr. Doherty is doing business as CPR, and/or is an alter ego of CPR.

9. Plaintiff is informed and believes and thereon alleges that Defendants, at all times mentioned herein, resided and/or conducted business in the State of California, County of San Diego.

///

10. Plaintiff further alleges on information and belief that, as of the date hereof, if CPR is a separate legal entity and is more than a dba for the individual Defendants, such individual Defendants are personally liable for any actions of CPR as either the owners or alter egos of CPR and one another. Similarly, CPR is liable for the actions of the individual Defendants because the individuality and separateness of Defendants has ceased to exist. The business affairs of Defendants, at all relevant times, were and are so mixed and intermingled that Defendants cannot be reasonably segregated. If CPR is a separate legal entity, the recognition of the separate existence of Defendants would not promote justice in that it would permit Andrea Doherty and/or Dylan Doherty to insulate themselves from personal liability to Plaintiff. Accordingly, Defendants are the alter ego of one another.

11. This Court has jurisdiction over all causes of action asserted in this Complaint pursuant to 28 U.S.C. § 1332 as Plaintiff and Defendants are citizens of different states and because this is a civil action wherein the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

12. Venue is proper in this court under 28 U.S.C. § 1391 because a substantial part of the conduct, events, and omissions giving rise to the violations of law occurred in the County of San Diego, California and Defendants all reside in the County of San Diego, California.

### III. FACTS COMMON TO ALL COUNTS

#### A. Plaintiff Engages Defendants After Visiting Defendants' Showroom

13. In April of 2022, while visiting family in Southern California, Plaintiff visited Defendants' showroom at 311 Industrial Way, Suite 3, Fallbrook, CA 92028, and saw Defendants' collection of classic Porsche vehicles along with Defendants' warehouse for storing vehicles for clients, and a repair shop where cars were actively being repaired.

///

///

14. Having returned home to Ohio, and after further reflecting on his dream to acquire a vintage Porsche, Plaintiff contacted Defendants in early 2023 to inquire about purchasing the Porsche.

15. Plaintiff provided Defendants the specific request for a classic Porsche 911 Targa in Tangerine.

16. While Defendants' inventory did not include this specific model at the time, Defendants offered three options to Plaintiff for assisting with the purchase.

17. Specifically, Mr. Doherty explained that Defendants could: (1) call past clients and other classic Porsche dealers in the United States and see if this model could be located; (2) find a poor condition model at a discount and restore it to the exact specifications of Plaintiff's requested model; or (3) explore the European market for the model.

18. Plaintiff chose to explore the European market and Mr. Doherty connected Plaintiff with a classic Porsche expert in the European market, who operated at the direction and under the control of Defendants, to assist in locating Plaintiff's requested model and inspecting the car.

19. Between May and June of 2023, Defendants' expert found and inspected several Porsches that matched Plaintiff's specifications.

20. Defendants' expert would send extensive pictures and regularly communicate with Plaintiff about the hunt for Plaintiff's Porsche.

21. Finally, on June 9, 2023, with the help of Defendants' expert, Plaintiff found his Porsche in Europe. Defendants' expert even negotiated with the European seller for a slight discount in the price and for the seller to complete repairs to the carburetor of the Porsche.

**B.     Defendants Induce Plaintiff to Enter Into A $166,000 Purchase Agreement With Defendants to Buy The Porsche**

22. In June of 2023, Defendants fraudulently induced and convinced Plaintiff that Defendants could use their expertise in the vehicle import process to

broker the deal with the European seller, import the Porsche to the United States, inspect the Porsche upon import, and work to transfer the Porsche from California to Plaintiff's residence in Ohio.

23. Defendants, however, never intended to obtain the Porsche and deliver the Porsche to Plaintiff, nor did Defendants have the skill and expertise to broker the deal and import the Porsche. Instead, Defendants made knowingly false and misleading representations to Plaintiff for the sole purpose of inducing Plaintiff to contract with Defendants and to pay them a substantial amount of money.

24. On June 27, 2023, to further Defendants' fraudulent scheme, Defendants induced Plaintiff to execute a Purchase Agreement ("PA") where Plaintiff agreed to provide Defendants with $166,000.00 for the above-described services. A true and correct copy of the PA is attached hereto as **Exhibit A**.

25. The purchase price of the Porsche was €145,000.00 and the excess funds would cover the exchange rate (1.10:1 at the time), plus approximately $6,000.00 for Defendants' administrative handling of the import and transfer of the Porsche for Plaintiff.

26. The PA also contained a provision that any prevailing party of any dispute regarding the PA would be entitled to reasonable attorneys' fees.

27. The same day Plaintiff signed the PA, Plaintiff wired the $166,000.00 to Defendants and confirmed receipt of the wire from Defendants.

C. **After Paying Defendants $166,000, Plaintiff Discovers Defendants Misled Plaintiff Regarding The Purchase Of The Porsche**

28. For the next two months, Defendants' expert continued to communicate with Plaintiff, including to confirm that the seller had commenced the repair process for the Porsche's carburetor, and to later confirm completion of the same.

29. After receiving word that repairs to the Porsche were complete, Plaintiff did not hear from Defendants again until November 2023.

///

30. Plaintiff finally reached out to and contacted Ms. Doherty to inquire about the status of the Porsche, and to convey Plaintiff's worry about taking delivery of the car during Ohio's winter months.

31. Ms. Doherty assured Plaintiff the Porsche would arrive in Defendants' showroom in one or two months and that Defendants would store the Porsche until spring before sending it to Plaintiff in Ohio.

32. Winter passed and spring arrived, but Plaintiff failed to receive any word from Defendants; Plaintiff again initiated contact with Defendants at the end of March to inquire about the status of the Porsche.

33. In early April, Ms. Doherty advised Plaintiff that the shipment of the Porsche was on track and the Porsche would arrive in California by April 15, 2024.

34. Ms. Doherty further stated that it would take up to five business days for the Porsche to clear customs, at which point the car would be inspected, and then the car would be ready by the end of April or first week of May.

35. By May 20, 2024, Plaintiff had still not heard from Defendants about the status of his Porsche, despite Defendants' previous statements that the car would be ready by the first week of May. Growing concerned over the validity of the transaction, Plaintiff called Ms. Doherty directly to inquire about the status of the Porsche. Instead of answering the call, Ms. Doherty text-messaged Plaintiff to schedule a call for the next day.

36. On May 21, 2024, Plaintiff heard nothing from Ms. Doherty, nor anyone else from CPR.

37. On May 22, 2024, Ms. Doherty text-messaged Plaintiff and notified him that she would call him later that day. Again, Plaintiff heard nothing from Ms. Doherty, nor anyone else from CPR.

38. On May 23, 2024, Plaintiff was finally able to reach Ms. Doherty on the phone. During that call Ms. Doherty blamed her lack of responsiveness on family health issues.

39. During the May 23, 2024 phone conversation, Ms. Doherty informed Plaintiff that the Porsche had finally arrived at port in Los Angeles, and she claimed that Defendants would have the Porsche in their shop for an inspection and would provide a report to Plaintiff. Ms. Doherty and Plaintiff arranged a call for May 30, 2024, to discuss the results from the inspection of the Porsche.

40. May 30, 2024, came and went without any word from Defendants.

41. Between May 31, 2024, and June 11, 2024, Plaintiff attempted several times to reach Defendants for answers about the whereabouts of the Porsche, only to receive more text messages from Ms. Doherty promising to call. Defendants never responded to Plaintiff's request for information.

42. Aggravated and suspicious over Defendants' lack of responsiveness, Plaintiff began to conduct an online investigation to see if he could track down the Porsche.

43. Plaintiff was able to use the VIN number and engine numbers to find the exact car he believed he was purchasing, which was (and as of the filing of this Complaint remains) listed for sale from a seller in the Netherlands (the "Seller"). *See* web page at https://www.elferspot.com/en/car/porsche-911-t-1970-3267131/ (a true and correct copy of a screenshot is attached hereto as **Exhibit B**).

44. On June 12, 2024, Plaintiff contacted the Seller in the Netherlands and confirmed that the Porsche on the Seller's website is indeed the car Defendants were supposed to purchase for Plaintiff.

45. To Plaintiff's surprise, the Seller stated that Defendants were in contact with him, but the Seller spent the last nine (9) months probing Defendants for answers about the funds for the Porsche, only to receive the exact same excuses from Defendants that Defendants provided to Plaintiff.

**D.    Defendants Promise To Return Plaintiff's $166,000**

46. Shortly after realizing Defendants' fraud, Plaintiff retained Ohio counsel to attempt to recover Plaintiff's $166,000.00 from Defendants.

47. On June 13, 2024, Plaintiff's Ohio counsel sent a demand letter to Defendants requesting the immediate return of the funds. A true and correct copy of the letter is attached hereto as **Exhibit C**.

48. Defendants responded to the demand letter that same day, expressly agreeing to return the $166,000.00. A true and correct copy of an email chain between Plaintiff's Ohio counsel and Defendant Andrea Doherty is attached as **Exhibit D**.

49. On June 17, 2024, Plaintiff's Ohio counsel inquired about the status of the transfer of funds and provided updated wiring instructions, without any reply from Defendants. *Id.*

50. To date, Defendants have failed to return Plaintiff's $166,000.00.

51. Plaintiff is still in the market for a Porsche and has exhausted significant resources in pursuit of the Porsche due to Defendants' breach and fraud.

52. Plaintiff will likely need to pay a higher purchase price as the cost of a vintage Porsche increases in value, and as a result of a less favorable exchange rate between the Euro and Dollar.

## COUNT I
### (Breach of Contract, against all Defendants)

53. Plaintiff re-alleges and incorporates by reference all prior allegations as if set forth fully herein.

54. Plaintiff and Defendants entered into a valid and enforceable contract (the PA) on June 27, 2023. *See* Ex. A.

55. Among other things, Defendants agreed to broker a transaction for Plaintiff and acquire the Porsche for Plaintiff, to import the Porsche into the United States, to inspect the Porsche, to transfer the Porsche's title to Plaintiff, and to transfer the Porsche to Ohio.

56. In exchange for purchase of the Porsche and these services, Plaintiff agreed to pay, and did pay, Defendants $166,000.00.

57. Plaintiff performed all the required terms under the contract, including wiring $166,000.00 to Defendants for purchasing and transferring the Porsche.

58. Defendants breached the contract by, among other things, failing to use Plaintiff's $166,000.00 to purchase the Porsche, failing to import and inspect the Porsche, and failing to transfer title and possession to Plaintiff.

59. Defendants have failed to return Plaintiff's $166,000.00 and have failed to acquire the Porsche as detailed in the PA.

60. As a direct and proximate result of Defendants' breach, Plaintiff has been damaged in an amount subject to proof at the time of trial, but in an amount not less than $166,000.00 and not including prejudgment interest at the maximum legal rate, attorneys' fees, and costs.

## COUNT II

### (Unjust Enrichment, against all Defendants)

61. Plaintiff re-alleges and incorporates by reference all prior allegations as if set forth fully herein.

62. Defendants expressly agreed to acquire the Porsche, import the Porsche to the United States, inspect the Porsche, transfer the Porsche's title to Plaintiff, and transfer the Porsche to Ohio.

63. Defendants requested $166,000.00 to broker the deal.

64. Plaintiff agreed to pay said amount and wired the same to Defendants.

65. After more than a year, Defendants have failed to purchase and deliver the Porsche to Plaintiff, nor have Defendants returned Plaintiff's funds.

66. Defendants are in receipt of Plaintiff's funds and therefore unjustly retain the benefit of Plaintiff's funds to Plaintiff's detriment.

67. Defendants' unjust enrichment has damaged Plaintiff in an amount subject to proof at the time of trial, but in an amount not less than $166,000.00 and not including prejudgment interest at the maximum legal rate, attorneys' fees, and costs.

## COUNT III

### (Fraud, against all Defendants)

68. Plaintiff re-alleges and incorporates by reference all prior allegations as if set forth fully herein.

69. Defendants represented to Plaintiff that they had expertise, knowledge, and ability to assist Plaintiff with the acquisition of the Porsche.

70. Defendants represented to Plaintiff that they would, in fact, broker the transaction for the Porsche, import the Porsche to the United States, inspect the Porsche, transfer the Porsche's title to Plaintiff, and transfer the Porsche to Ohio.

71. In reliance of Defendants' representations and promises, Plaintiff agreed and continued to work exclusively with Defendants, and Plaintiff wired Defendants $166,000.00 to complete the transaction.

72. Defendants further represented to Plaintiff that Defendants did, in fact, purchase the Porsche and bring the Porsche to the United States from Europe.

73. None of Defendants' representations or promises was true.

74. When it became clear that Defendants had not purchased the Porsche and could not deliver it to Plaintiff, Defendants represented to Plaintiff that they would return Plaintiff's $166,000.00. That, too, was a lie.

75. Plaintiff relied on Defendants' promise to return the $166,000.00.

76. To date, Defendants have failed to purchase and import the Porsche, to transfer the title of the Porsche, to deliver the Porsche to Plaintiff, or return Plaintiff's $166,000.00.

77. Plaintiff is informed and believes, and thereon alleges that Defendants never intended to use the $166,000.00 to acquire the Porsche, per the terms of the PA. Defendants instead intended to defraud Plaintiff out of the $166,000.00 by presenting the PA and making multiple false representations regarding the acquisition of the Porsche to Plaintiff.

///

78. When Defendants made these false representations to Plaintiff, Defendants knew them to be false or were reckless in not knowing them to be false and made the representations to deceive and defraud Plaintiff, and to induce Plaintiff to enter into the PA and wire Defendants $166,000.00.

79. Plaintiff, at the time of the representations, was ignorant of the falsity of the representations and reasonably believed them to be true.

80. Plaintiff entered into the PA and wired the $166,000.00 for the Porsche in detrimental reliance on Defendants' representations.

81. Plaintiff has been harmed by Defendants' misrepresentations.

82. Had Plaintiff known the actual facts, Plaintiff would not have entered into the PA or wired the $166,000.00.

83. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has suffered damages in an amount to be proven at trial, but in no event less than $166,000.00, not including prejudgment interest at the maximum legal rate, attorneys' fees, and costs.

84. Upon information and belief, Plaintiff alleges that Defendants have a pattern, custom, and practice of perpetuating the same fraud complained of herein to other customers that have resulted in other lawsuits, yet Defendants continue to engage in such misconduct without regard for the consequences to innocent customers like Plaintiff.

85. Upon information and belief, Plaintiff alleges that Defendants' actions in connection with the above-described fraud were undertaken with fraud, oppression, and malice, and with the intent of depriving Plaintiff of his rights and money, thus justifying an award of punitive and exemplary damages against each Defendant in sum according to proof.

///

///

///

## COUNT IV

**(Violation of California Business & Professions Code §§ 17200 *et seq.*, against all Defendants)**

86. Plaintiff re-alleges and incorporates by reference all prior allegations as if set forth fully herein.

87. As described herein, Defendants engaged in unlawful, unfair, and fraudulent business acts and practices within the meaning of California Business and Professions Code sections 17200 *et seq.*

88. Defendants' unlawful, unfair, and fraudulent business practices allow Defendants to maintain an unfair advantage over other businesses who conduct their business in a fair, lawful manner.

89. Defendants, and each of them, are "persons" within the meaning of California Business and Professions Code sections 17200 *et seq.*

90. Upon information and belief, Defendants have a pattern, custom, and practice of perpetuating the same unfair, unscrupulous, and immoral business practices complained of herein to other customers that have resulted in other lawsuits and a judgment against Defendants, yet Defendants continue to engage in such misconduct without regard for the consequences to them and innocent customers.

91. As a direct and proximate result of Defendants' misrepresentations, Plaintiff has suffered damages in an amount to be proven at trial, but in no event less than $166,000.00, not including prejudgment interest at the maximum legal rate, attorneys' fees, and costs.

92. Defendants' conduct has been a substantial factor in causing harm to Plaintiff.  Defendants' unlawful, unfair, and fraudulent business practices as described above present a continuing threat to members of the public if Defendants continue to defraud other customers as complained of herein.

///

93. Pursuant to California Business and Professions Code section 17203, Plaintiff seeks an order from this Court that:

    a) Provides injunctive and declaratory relief finding that Defendants have violated the provisions of California Business and Professions Code sections 17200 *et seq.*;

    b) Directs Defendants to disgorge to Plaintiff all funds and benefits obtained by Defendants as a result of Defendants' unfair and unlawful business practices; and

    c) Enjoins Defendants and their respective successors, agents, servants, employees, and all other persons acting in concert with Defendants directly or indirectly from engaging in any further conduct violating California Business and Professions Code sections 17200 *et seq.* as set forth herein.

## COUNT V
**(Conversion, against all Defendants)**

94. Plaintiff re-alleges and incorporates by reference all prior allegations as if set forth fully herein.

95. Plaintiff, at all times, owned or had a right to possess his $166,000.00.

96. Defendants, with knowledge of Plaintiff's right and ownership interest in the $166,000.00, unlawfully took and kept possession of the $166,000.00 and have not returned it.

97. Defendants, through Ms. Doherty's own admission, acknowledge and agree that Defendants wrongfully possess Plaintiff's $166,000.00.

98. Plaintiff does not consent to Defendants' continued retention of the above funds, and Plaintiff has expressly requested return of these funds.

99. By virtue of Defendants' conversion, Plaintiff has been damage in an amount to be proven at trial, but in no event less than $166,000.00, not including prejudgment interest at the maximum legal rate, attorneys' fees, and costs.

100.  Upon information and belief, Plaintiff alleges that Defendants have a pattern, custom, and practice of perpetuating the same type of conversion complained of herein on other customers that have resulted in other lawsuits, yet Defendants continue to engage in such misconduct without regard for the consequences to innocent customers like Plaintiff.

101.  Upon information and belief, Plaintiff alleges that Defendants' actions in connection with the above-described conversion were undertaken with fraud, oppression, and malice, and with the intent of depriving Plaintiff of his rights and money, thus justifying an award of punitive and exemplary damages against each Defendant in sum according to proof.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following and requests that the Court enter judgment against Defendants, jointly and severally, as follows:

**On the First Cause of Action:**

1. For general and special damages against all Defendants in an amount no less than $166,000.00;

**On the Second Cause of Action:**

1. For general and special damages against all Defendants in an amount no less than $166,000.00;

**On the Third Cause of Action:**

1. For general and special damages against all Defendants in an amount no less than $166,000.00;

2. For exemplary and punitive damages against Defendants sufficient to dissuade such conduct in the future in an amount to be determined at trial;

**On the Fourth Cause of Action:**

1. An order from this Court that provides injunctive and declaratory relief finding that Defendants have violated the provisions of California Business and Professions Code sections 17200 *et seq.*;

2. An order from this Court that directs Defendants to disgorge to Plaintiff all funds and benefits obtained by Defendants as a result of Defendants' unfair, unlawful, and/or fraudulent business practices; and

3. An order from this Court that enjoins Defendants and their respective successors, agents, servants, employees, and all other persons acting in concert with Defendants directly or indirectly from engaging in any further conduct violating California Business and Professions Code sections 17200 *et seq.* as set forth herein;

**On the Fifth Cause of Action:**

1. For general and special damages against all Defendants in an amount no less than $166,000.00; and

2. For exemplary and punitive damages against Defendants sufficient to dissuade such conduct in the future in an amount to be determined at trial;

**On Each and Every Cause of Action:**

1. For costs of suit, including reasonable attorneys' fees;

2. For pre-judgment interest at the legal rate; and

3. For such other and further relief as the Court deems just and proper.

Dated: July 17, 2024                HIGGS FLETCHER & MACK LLP


By:     /s/ *Jacob T. Spaid*
    JACOB T. SPAID
    JAKE D. SESTI
    Attorneys for Plaintiff
    ROBERT B. WHITMAN

## JURY DEMAND

Plaintiff Robert B. Whitman, by and through counsel, hereby demands a jury by trial.

Dated: July 17, 2024                 HIGGS FLETCHER & MACK LLP

By:  /s/ Jacob T. Spaid
JACOB T. SPAID
JAKE D. SESTI
Attorneys for Plaintiff
ROBERT B. WHITMAN